[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDA OF DECISIONS ON DEFENDANT'S MOTION TO SET ASIDE VERDICT (131), DEFENDANT'S MOTION FOR REMITTITUR (132), OPPOSITION TO MOTION FOR REMITTITUR (133), AND PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE VERDICT (134)
On March 14, 1991 the jury returned a verdict awarding the plaintiff $28,800.00 damages on the Second Count of his third amended complaint based on his claim of promissory estoppel.
The subject motions and oppositions thereto address only that verdict and award.
Paragraphs 1-10 of the Second Count of the third amended complaint recites the allegations relied upon by the plaintiff as the predicate for his refraining to seek employment opportunities during the period from April 1987 up to and including September of 1987 as set forth in paragraph 11. These alleged continual representations of defendant and/or agents of defendants over that period of time, plaintiff claims, estopped defendant from denying the position . . . to the plaintiff as set forth in paragraph 12.
Based upon the general verdict in favor of the plaintiff on the Second Count of plaintiff's third amended complaint, we must presume that the jury found all the claims and allegations in favor of the plaintiff. Buchman v. Peoples Express, Inc.,205 Conn. 166, 7n, 172 (1987). Neither party requested interrogatories i.e. Finley v. Aetna Life Casualty Co.,202 Conn. 190, 202 (1987).
The allegations in support of plaintiff's Second Count claim for relief under the topic of "Promissory Estoppel" is easily distinguished from the facts and holding in Fisher v. Jackson,142 Conn. 734, 737 (1955). In Fisher plaintiff advanced the claim that special consideration moved to defendant because the plaintiff gave up his prior job to join the defendant's newspaper. That court held that the mere giving up of a job by one who decides to accept a contract of employment is but an incident necessary on his part to place himself in a position to accept and CT Page 4717 perform the contract. It is not consideration for a contract of employment. This plaintiff argues that he suffered detriment over the prolonged period of contact and discussions with defendant and his agents.
 "To contribute sufficient consideration for a promise, an act or promise not only must be a detriment to the promissee but must be bargained for and given in exchange for this promise. Fisher 737."
The jury in reason, from the claims of the plaintiff, and the evidence produced by the plaintiff, if fully believed, could easily determine that defendant and/or agents induced plaintiff to refrain "from accepting or seeking employment opportunities on the basis of those representations" or inducement by defendant and/or his agents.
Defendant's next theory that plaintiff if hired could have been fired after one day's work advances mere speculation as to a non-event. One cannot avoid an obligation by injecting the theory that a contingency may or may not happen.
The evidence in this case reveals a pattern of consistent conduct and statements between plaintiff and the defendant and/or his agents concerning plaintiff's promised employment that was clearly intended to be mutually profitable.
The jury in reason could conclude that there was no bad faith, omissions, inadvertence or lack of due diligence on the part of the plaintiff. The evidence clearly supported a finding that plaintiff was prejudiced by defendant's conduct.
Defendant adequately argued to the jury in his summation his claim on the evidence concerning damages, if any, to be awarded.
 "The ultimate test which must be applied to the conduct by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." Birgel v. Heintz, 163 Conn. 23, 28 (1972)
There is no claim or evidence that the jury were influenced by partiality, prejudice or corruption. The only claim remaining under the "ultimate test" is whether the jury's award so shocks the sense of justice as to compel the conclusion that the jury CT Page 4718 were influenced by mistake.
No such conclusion can be drawn to warrant the court's interference. Pisel v. Stamford Hospital, 180 Conn. 314, 342
(1980).
The modern approach to damages in this type of case is that if the elements of a promissory estoppel are present a contract is formed and therefore ordinary remedies for breach of promise are available.
 "Either a contract was formed or it was not, `you have to take one leg or the other.'" Wiliston, IV American Law Institute Proceedings, Appendix p. 103 (1926) 1 A Corbin 205"
Flexibility of remedy is to be encouraged in cases of promissory estoppel.
The award as returned by this jury falls within this classification of flexibility and is found to be appropriate in view of the evidence and in view of the absence of any more appropriate specific request to charge.
The amount of damage is within the province of the jury.
 "It is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence."
 "In order to determining whether the verdict should be set aside, the `evidential underpinning of the verdict itself must be examined."' Barbieri v. Taylor, 37 Conn. Sup. 1, (1980)
This verdict does not indicate poor judgment by the jury. It does not shock the conscience of the court. It does not indicate that the jury allowed sympathy to creep into their verdict thereby rendering a verdict which was biased, prejudicial or manifestly excessive.
The defendant's motion to set aside the verdict is denied (131).
The defendant's Motion For Remittitur is denied (132).
The plaintiff's opposition to Motion For Remittitur is sustained (133) and the plaintiff's Opposition to Motion to Set CT Page 4719 Aside Verdict (134) is sustained.
JOHN N. REYNOLDS, STATE TRIAL REFEREE.