[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE
Pursuant to Practice Book § 10-39 et seq. the defendant Von Roll Isola USA, Inc. ("VRI"), has moved to strike the First, Second, Fourth, Fifth and Sixth Counts of the plaintiffs complaint, dated March 4, 2002. The First Count alleges wrongful discharge. The Second Count is a claim for breach of the implied covenant of good faith and fair dealing. The Fourth Count alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq. The Fifth and Sixth Counts allege, respectively, intentional infliction of emotional distress and negligent infliction of emotional distress.
The defendant argues that the First Count is insufficient as a matter of law because it fails to allege a violation of an important public policy. The Second Count is allegedly insufficient because it fails to allege a violation of important public policy or that VRI acted with a "sinister motive." The defendant argues that the Fourth Count fails because it is based on an employer-employee relationship. The Fifth Count, it is argued fails because the plaintiff has not alleged "extreme or outrageous" conduct by the defendant. Lastly, the defendant argues that the Sixth Count is insufficient as a matter of law because it does not allege unreasonable conduct in the termination process by the defendant.
The plaintiff has filed an objection to the motion to strike. However, the plaintiff has limited its objection only to that portion of the defendant's motion to strike which seeks the striking of the Fifth Count and the Sixth Count of the plaintiffs complaint. In reviewing the plaintiffs objections, the court cannot ascertain whether, in fact, the plaintiff has abandoned any objection to the striking of the First, Second and Fourth Counts. Therefore the court will review each of the defendant's arguments as to all counts to which the motion to strike is directed. CT Page 14371
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiffs complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Life and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Id. "A motion to strike is properly granted where a plaintiffs complaint alleges legal conclusions unsupported by facts." Id. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185. (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541-50, 427 A.2d 822 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiffs complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1
(1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., supra. 196 Conn. 108-09. However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. Cavallov. Derby Savings Bank, 188 Conn. 281, 285, 449 A.2d 986 (1982).
In the First Count the plaintiff alleges that the defendant wrongfully discharged him from employment, causing him to lose wages and benefits and to suffer humiliation, embarrassment and mental anguish. "[T]he right to recover in tort for wrongful discharge extends only to employees at will." Tomlinson v. Board of Education, 226 Conn. 206, 212, 629 A.2d 333
(1993).
In his complaint the plaintiff alleges that he was hired by the defendant as a "shipper" on or about August 7, 1999 and performed his duties until his discharge from this position, on January 23, 2001. He does not allege that the terms of his employment were that he was to be employed for a definite period of time. Accordingly, he is deemed to be an employee at will. Morris v. Hartford Courant Co., 200 Conn. 676, 678, CT Page 14372513 A.2d 66 (1986); Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629,153 A.2d 426 (1959).
Sheets v. Teddy's Frosted Food, Inc., 179 Conn. 471, 427 A.2d 385
(1980), recognized that it is a "general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will." Id. 474; see, e.g., Somers v. Cooley Chevrolet Co., supra; Fisher v.Jackson, 142 Conn. 734, 736, 118 A.2d 316 (1955). In Sheets, however, the court "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Carbone v. Atlantic RichfieldCo., 204 Conn. 460, 466-67, 528 A.2d 1137 (1987), quoting Sheets v.Teddy's Frosted Food, Inc., supra, 475.
In interpreting this exception, the courts have taken a narrow view. "We note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Burnham v. Karl Geib, P.C., 252 Conn. 153, 159, 745 A.2d 178 (2000); Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 79, 700 A.2d 655 (1997).
In Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223
(1985), the Appellate Court recognized a limitation on the public policy exception to the at-will doctrine. The court in Atkins concluded: "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis added; internal quotation marks omitted.) Id., 648; Burnham v. Karl Gelb, P.C., supra, at 159-160.
There is a growing receptivity to recognize as actionable tort claims for wrongful discharge by an employer arising out of termination for an employee's refusal to commit perjury, for filing a workers' compensation claim, for engaging in union activity or for serving on a jury. Sheetsv. Teddy's Frosted Food Co., supra at 476-77. The court in Sheets
determined that a cause of action for wrongful discharge will lie when the former employee can demonstrate an improper reason for the discharge, "a reason whose impropriety is derived from some important CT Page 14373 violation of public policy." Id., 475. Sheets warns, however, that courts should proceed cautiously in their consideration of whether a public policy violation exists. Id., 477; Thibodeau v. Design Group OneArchitects, LLC, supra, at 5 78-79.
"The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Sheets v. Teddy'sFrosted Food Co., supra at 478. Later cases test and define the limits of an important violation of public policy. Because of the vagueness that inheres in the concept of public policy; Morris v. Hartford Courant Co., supra at 680; the court must make an analysis of employee claims in such cases. Faulkner v. United Technologies Corp., supra at 588-89.
In Morris, the defendant employer cited misappropriation of company funds as its reason for the plaintiff employee's termination. The plaintiff had brought an action in tort for wrongful discharge, claiming that his employer's false accusations of criminal conduct violated public policy. Our Supreme Court determined that the plaintiffs claim of wrongful discharge did not fall within the narrow Sheets exception to the terminable at-will rule because the plaintiff had not identified any public policy that was "affronted by his termination." Id., 680. The plaintiff failed to allege a violation of any explicit statutory or constitutional provision. Id. Moreover, the plaintiff did not allege the contravention of any judicially conceived notion of public policy. Id. Our Supreme Court, therefore, held that an accusation of criminal conduct does not derive from an important violation of public policy and denied the plaintiffs requested relief. Id.
In the present case the plaintiff alleges that he was discharged by his employer the defendant after being accused of committing a larceny. InMorris the Supreme Court ruled that a "false but negligently made accusation of criminal conduct" does not violate public policy. Therefore the motion to strike the First Count is granted.
In the Second Count, the plaintiff alleges that the defendant breached the implied covenant of good faith and fair dealing. The court agrees with the defendant, which argues that this is inconsistent. The First Count alleges a cause of action for wrongful discharge, available only to employees at will. The Second Count alleges an implied contract between the parties requiring that the plaintiff could not be discharged without "good cause." However, under either set of circumstances the Second Count CT Page 14374 fails.
The plaintiff has not alleged any facts or agreement between the parties to indicate the existence of an implied contract. Thus, the court determines again, that the plaintiff is an employee at will. "[A]bsent a showing that the discharge involves an impropriety which contravenes an important public policy, an [at will] employee may not challenge a dismissal based upon an implied covenant of good faith and fair dealing."Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470, 528 A.2d 1137
(1987). The plaintiff has not alleged that his discharge violated any statutory or constitutional provisions or that it violated any judicially recognized public policy, as well. Morris v. Hartford Courant Co., supra200 Conn. 680.
Additionally, the plaintiff has not alleged any bad faith, dishonest purpose, constructive or actual fraud, or sinister motives by the defendant. Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 501 (1992);Buckman v. People Express, Inc., 205 Conn. 166, 170-71, 530 A.2d 596
(1987); Saint Francis Hospital and Medical Center v. DeCaro, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV95-07058 14 (December 9, 1996) (Wagner, JTR). The court, in viewing the pleading in a manner most favorable to the plaintiff finds that the plaintiff has not alleged sufficient facts to set forth evil motive or outrageous conduct by the defendant to sustain the Second Count. Therefore, the Second Count is ordered stricken.
As to the Fourth Count of the complaint alleging a violation of CUTPA, it too must be stricken. A CUTPA claimant must have a consumer relationship with the party who is allegedly engaging in "unfair methods of competition or unfair or deceptive acts or practices." General Statutes § 42-110b (a); Jackson v. R.G. Whipple, Inc., 225 Conn. 705,727, 627 A.2d 374 (1993). Employer-employee relationships are not included within CUTPA's definition of "trade or commerce." Quimby v.Kimberly Clark Corp., 28 Conn. App. 660, 670, 613 A.2d 838 (1992); Shahv. Cover-It, Inc., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV99-0068 182 (April 10, 2000) (Arnold, J.),2000 Ct. Sup. 4091 (2000).
In the Fifth Count, the plaintiff Mendez alleges that the defendant VRI intentionally inflicted emotional distress upon him, causing him to lose wages and benefits, and to suffer humiliation, embarrassment and mental anguish.
The legal standard for intentional infliction of emotional distress is well settled and set forth in Appleton v. Board of Education, CT Page 14375254 Conn. 205, 210, 757 A.2d 1059 (2000), wherein the court stated: "In order for the plaintiff to prevail for a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted). The plaintiffs complaint interpreted in a favorable light meets the first, third and fourth criteria for the purposes of defeating a motion to strike. The court, however, must analyze the defendant's conduct to determine whether the conduct, as alleged in the complaint, was "extreme and outrageous," as required by the second criteria.
"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id.; Bell v. Board of Education, 55 Conn. App. 400, 410,739 A.2d 321 (1999). "Only where reasonable minds disagree does it become an issue for the jury." Appleton v. Board of Education, supra. "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim," Outrageous! ". . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form a basis for an action based upon intentional infliction of emotional distress." Id. at 210-11. "It is clear that individuals in the workplace should reasonably expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. Such individuals reasonably should expect to be subject to other vicissitudes of employment such as workplace gossip, rivalry, personality conflict and the like." Perodeau v. Hartford, 259 Conn. 729,757, 792 A.2d 552 (2002). "Individuals reasonably should expect to be subject to routine employment-related conduct, including performance evaluation, both formal and informal, decisions related to such evaluations, such as those involving transfer, demotion, promotion and compensation; similar decisions based on the employer's business needs and desires, independent of the employee's performance, and disciplinary or investigatory action arising from actual or alleged employee misconduct." Id.
The plaintiff has not alleged conduct by the defendant that meets the CT Page 14376 standards for intentional infliction of emotional distress. The actions he alleges in his complaint are his termination and the defendant's report of a larceny to the police. Pursuant to the holdings in Appletonv. Board of Education, supra, 254 Conn. 205 and Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 700 A.2d 655 (2000), the defendant's actions cannot be deemed to meet the demanding standard of "extreme and outrageous." "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. Parsons v. United Technologies Corp., supra, 243 Conn. 89
(quoting Madani v. Kendall Ford, Inc., 312 Or. 198, 204, 818 P.2d 930
(1991). Thus, the Fifth Count is also ordered stricken.
The Sixth Count alleges that the defendant negligently inflicted emotional distress upon the plaintiff. In the employment context an action for negligent infliction of emotional distress may be based only on the employer's unreasonable conduct in the termination process.Perodeau v. City of Hartford, supra, 259 Conn. 762-63, Morris v. HartfordCourant Co., supra 200 Conn. 681-82. The emphasis is on whether the manner of termination was unreasonable, not on whether the termination itself was unreasonable. Perodeau v. City of Hartford, supra 259 Conn. 744;Morris v. Hartford Courant Co., supra 200 Conn. 683-84.
The plaintiff has not, as the plaintiff argues, alleged any circumstances or facts dealing directly with the manner of his termination. Accordingly, the Sixth Count is hereby ordered stricken.
In summary, the defendant's motion to strike the First, Second, Fourth, Fifth and Sixth Counts of the plaintiffs complaint is hereby granted as to each of these counts.
The Court
by ___________________ Arnold, J. CT Page 14377