**Bryant CANNING, Plaintiff,**

v.

**Clarence BUTCHER et al, Defendants.**

**Civ. No. N 77–299(WWE).**

United States District Court,
D. Connecticut.

April 5, 1984.

Alan E. Silver, New Haven, Conn., for plaintiff.

Alvin M. Murray, Asst. Corp. Counsel, Karen Nash, Durrick Jones, New Haven, Conn., for defendants.

## RULING ON RECONSIDERATION OF GRANT OF SUMMARY JUDGMENT FOR PLAINTIFF

EGINTON, District Judge.

In this action brought under 42 U.S.C. § 1983, the plaintiff claims that his rights were violated when he was discharged from his position as a part-time supernumerary police officer for the City of New Haven (hereinafter "New Haven" or "City"). On March 30, 1983, the court ruled on cross motions for summary judgment, denying the defendants' motion and granting the plaintiff's motion. The court subsequently granted defendants' motion for reconsideration, and allowed the parties additional time in which to file papers addressing the summary judgment issues. The last of these papers were filed March 22, 1984, when defendants filed a completed copy of the provisions of the New Haven City Charter (hereinafter "the charter") and other regulations on which they rely.

The court has carefully reviewed all of the submissions of the parties, including those specifically mentioned in the defendants' motion to reconsider, and has concluded that its original ruling is correct.

The court in its original ruling held that Section 116 of the New Haven City

Charter creates on behalf of police department "officers and employees" a property interest the taking of which is cognizable by 42 U.S.C. § 1983. With that general proposition the defendants appear to have no quarrel. Rather, they argue that the provisions of Section 116 do not apply to New Haven police officers who serve in a supernumerary capacity.

No such limitation appears in the text of Section 116. As the court noted in its original ruling, that section provides:

> Each of said boards of commissioners [of the police department or fire department] shall have power, *for cause, after a hearing on charges, made in writing,* to remove, reduce in rank, or suspend without pay *any officer or employee in its department that it has power to appoint.* No removal, reduction in rank, or suspension shall be made for political reasons. Charges against any officer or employee shall be preferred by the chief, served upon the person accused at least forty-eight hours before the time fixed for a hearing, and presented to the board of commissioners of the department to which such officer or employee may belong.

New Haven City Charter, § 116, (emphasis added). As the court also noted in its earlier ruling, defendants concede that supernumerary police officers are appointed by the board of police commissioners. Accordingly, the express language of Section 116 applies to supernumerary police officers.

The court recognizes that, in some unusual circumstances, the proper interpretation of a statutory provision may be different from that which the statutory language seems unambiguously to suggest. However, the court finds no such unusual circumstances in this case.

■ Defendants make several arguments in support of their position that supernumerary police officers are not "officers or employees" within the meaning of Section 116. First, defendants argue, in

essence, that no one in the police force ever thought that supernumerary officers were included in Section 116. For example, the affidavit of William F. Farrell, police chief of New Haven, states: "I am not and was not aware of any other limitations or procedures concerning dismissal of supernumerary part-time [sic] police officers[1] other than Item 3 of Rule 14 of the Department Rules which provides that 'no person will be appointed or discharged from the force for his religious or political beliefs.' " Further, the affidavit states that supernumerary officers "were never considered as 'officers and employees' of the department to whom the provisions of Section 116 of the Charter would apply..."

The court is not unsympathetic to the administrative changes which the department may face in recognizing, reportedly for the first time, that Section 116 applies to supernumerary officers. However, it cannot be argued that supernumerary officers should lose the protection given them by the New Haven City Charter, simply because the police department mistakenly supposed no protection was owed them. Accordingly, the affidavits filed by defendants cannot be relied upon to exempt supernumeraries from the coverage of Section 116.

Defendants also argue that the internal evidence of the charter demonstrates an intention to exclude supernumerary officers from the scope of Section 116. Defendants rely upon two other sections which distinguish between supernumerary officers and other city employees. First, in Section 198(j), which divides city workers into two classes of service, supernumerary officers are placed in the "unclassified" service, while other police officers are by implication placed in the "classified" service. No mention is made of any substantive or procedural termination rights applicable to either class.

Second, in Section 191, the charter provides that the civil service board rules on

---

**1.** The court notes that in this affidavit Mr. Farrell refers to the plaintiff both as an "officer" and an "employee."

"appointments or promotions" of certain classes of officials do not apply to supernumerary police officers and substitute firemen. Specifically, Section 191 provides that, unlike some other officials, supernumerary officers need not be drawn only from the three highest scoring persons on competitive examinations.

These provisions fail to undercut the clear and comprehensive requirements of Section 116. Section 116 is placed among the charter provisions specifically addressed to the operation of the police department; the other provisions appear among sections relating to the civil service generally. Section 116 specifically covers the termination of police department officers and employees; the other provisions primarily concern selection and promotion (rather than termination) of civil servants generally. Finally, the fact that these latter two provisions draw a distinction between supernumerary police officers and other workers is not persuasive. If anything, it highlights the absence of such a distinction in Section 116. The language of the other sections shows that the drafters of the charter had in mind the existence of different classes of police officers, and occasionally provided in express terms for different treatment of these classes. No such differentiation was written into Section 116. It would be inappropriate for this federal court to read into the New Haven City Charter a limitation not placed there by its drafters and not inferable from its language.[2]

▮ Finally, defendants argue that certain documents give the police department the right to terminate supernumerary police officers essentially at will. First, defendants rely on a "Memorandum of Understanding" signed by the plaintiff. This memorandum states that the signer understands "that being employed as a [part time] supernumerary police officer in no way guarantees future *full time* employment." (emphasis added.) This memorandum merely negates any expectation that plaintiff's part time job will grow into a full time job. It says nothing about the continuation of the part time position to which plaintiff was actually appointed. Accordingly, the memorandum is irrelevant to this case.

Second, defendants cite a form letter which was apparently mailed to all supernumerary officers upon their selection. The letter contains information as to the first day of training, appropriate dress and similar matters. Two sentences at the end of the letter are relied upon by defendants to establish the City's right to terminate supernumerary officers without following Section 116.

The first of these sentences states that the new officer "must recognize the fact that it is a conditional appointment." (Letter to Mr. Canning, dated May 19, 1976, attached as Exhibit B–1 to Defendants' memorandum of law on cross motions for summary judgment, p. 1, hereinafter referred to as "letter.") However, this is immediately followed by two sentences which make clear that "conditional" refers to the condition of "successful completion of the recruit training program and certification." Accordingly, the reference to conditional employment cannot be read to impose upon plaintiff's appointment a general probationary or "at will" status.

The second sentence on which defendants rely states: "Upon successful completion of the training program, you will be subject to supervisory review and dismissal for unsatisfactory performance or behavior will be mandatory at any period of your tenure as a supernumerary part time police officer." (Letter, p. 1–2.) Defendants read this confusing statement to mean that the City is entitled to dismiss supernumerary officers at any time simply after review by a supervisor. In other words, the only process due to such officers is being reviewed by a supervisor. If a review is unfavorable, the officer may be dismissed

---

**2.** The defendants cite other police department rules and civil service regulations, none of which can effectively overrule the city charter.

*Cf.* Section 192, New Haven City Charter: "Any appointment or removal made in violation of this charter shall be null and void."

without prior notice, an opportunity to comment or any other limitations.

The court has difficulty in finding such broad authority in this one vague sentence. The court reads the sentence to mean simply this: Like any other employee, a supernumerary officer has supervisors who will periodically evaluate his performance. If his performance or conduct is unsatisfactory, he will be dismissed. The sentence does not apprise the officer of any details of the dismissal process, nor negate the existence of such a process. The plain import of the sentence is merely to inform the newly selected officer that he must do a good job in his new position or he will be discharged.

■ However, even if either of the documents relied upon by defendants were enough to demonstrate[3] the "at will" nature of plaintiff's employment in the *absence* of Section 116, neither is effective in overcoming that section. Even assuming that the charter rights granted to police officers and employees are not binding upon the City, but can be waived by the employee,[4] neither of these documents can be interpreted as amounting to such a waiver.

As noted above, the memorandum of understanding signed by the plaintiff is irrelevant to plaintiff's rights, or lack thereof, to continued employment as a part time supernumerary officer. With regard to the form letter, the court doubts that unilateral statements mailed out in a form letter could constitute a free, knowing and intelligent waiver of a right granted by charter. However, assuming this to be possible, the statements relied upon defendants cannot, for the reasons discussed above, be interpreted as having such an effect.

■ For the foregoing reasons, as well as for the reasons set forth in the court's original ruling, the original ruling is AFFIRMED, and summary judgment is hereby GRANTED in favor of the plaintiff.[5]

---

**3.** The court does not imply that, in ordinary circumstances, an employer must affirmatively prove the "at will" status of an employee. The court recognizes that, under established principles, every employment arrangement is at the will of the employer, as well as of the employee, unless limited by contract, statute or similar authority. *E.g., Sheets v. Teddy's Frosted Foods,* 179 Conn. 471, 474, 427 A.2d 385 (1980); *Somers v. Cooley Chevrolet Co.,* 146 Conn. 627, 629, 153 A.2d 426 (1959); *Smith v. Liberty Mutual Insurance Co.,* 395 F.Supp. 1098, 1099–1101 (N.D.Ga.1975), *aff'd* 569 F.2d 325 (5th Cir.1978). In this case, however, the City's freedom to terminate "officers and employees" of the police department has been limited by the city charter. Accordingly, the issue is whether, despite the existence of the charter provision, certain documents make plaintiff supernumerary police officer terminable at the will of the City.

**4.** The court notes that this assumption is doubtful in view of Section 192 of the charter, quoted at n. 2, *supra.*

**5.** One final argument of the defendants should be briefly addressed. Defendants argue that plaintiff has conceded that he had no property interest in his former position. Although an early submission does contain such a statement, plaintiff's subsequent papers retract it, and argue that such a property interest does exist. The court, on defendants' motion, agreed to reconsider its original ruling, to allow defendants to file further papers in opposition and to raise new arguments. Under these circumstances it would be inequitable to ignore the later submissions of the plaintiff, including those on the property interest issue.